H. A. Petersen, Appellee, v. H. W. Heywood, Appellant.

No. 40678.

April 10, 1931.

Rehearing Denied September 26, 1931.

E. N. Farber, for appellee.

C. H. Van Law, for appellant.

■ ALBERT, J.—The plaintiff, H. A. Petersen, for many years prior to the time of the commencement of the facts involved in this controversy, had been engaged in the manufacturing and steel business in the city of Marshalltown. He established the business and built it up, part of the time in partnership with a man by the name of Bates, but Petersen bought out his interest some time prior to the time in controversy herein. Petersen was the owner in fee of the real property and the shops and buildings thereon, which are incidentally involved herein, with machinery, material and supplies contained therein, and was conducting a going business.

Some time in the latter part of 1921 or early in 1922, Petersen was looking for a young man whom he could take in and educate along this line of business, and also one who was capable of doing office work in relation thereto as he knew nothing about keeping books. He had a very meager education, but was thoroughly competent to direct and look after the workings in the mechanical part of the business. Negotiations were commenced with the defendant, a young man then 29 years of age, looking to the end that he would become interested in said business with the plaintiff. The defendant had been connected with and had experience in bookkeeping and in the affairs of other corporations. He was a graduate of the engineering department of the University of Illinois and had experience along engineering lines. The books of the concern at that time were kept by a daughter of the plaintiff. When these negotiations started, the defendant looked over the plant and was given free access to all of the books and papers of the plaintiff's business, and after having gone over the same, he and the plaintiff entered into an agreement that the defendant should buy a one-half interest in said business, including the real property, for the sum of $18,-000.00, and at that time the defendant suggested that they ought to form a corporation. The deal was closed by the defendant's paying to the plaintiff $14,000.00 in cash, and $4,000.00 in promissory notes, and the business continued, both parties participating therein. The office work, keeping of books, etc., were all taken charge of and carried on by the defendant, Heywood.

Within a few weeks after the closing of this deal, articles of incorporation were executed by these two parties and the due

formalities of organizing a corporation were carried out. The stock of the corporation consisted of 360 shares of a par value of $100, and the plaintiff and the defendant were each issued 180 shares.

Among other things, at the time of the sale of the half-interest to Heywood, the plaintiff had an outstanding promissory note of $1,000 due to one L. W. Brown for machinery which had been purchased and put into the business prior to the time of the sale of the half-interest to the defendant. After the organization of the corporation, which was in July, 1922, Brown was asking payment of this note and for the purpose of paying it or securing Brown, a certificate of stock for 90 shares was turned over by Petersen, and in lieu thereof, a certificate of 10 shares was issued to Brown, and another certificate for 80 shares issued to the plaintiff. It might be said by way of explanation here that the plaintiff held originally two certificates of stock for 90 shares each.

Some time later in the year, the defendant satisfied the Brown claim in two payments from the funds of the corporation, and the ten shares of stock which Brown then held were turned back to the corporation. Later the defendant sought to treat these 10 shares as belonging to the corporation and divided the same by issuing five shares thereof to himself and five shares to the plaintiff. The status of the holdings at this point, therefore, so far as this stock was concerned, would appear to be that the defendant owned 185 and the plaintiff 175 shares.

The business was conducted successfully with profit and seems to have so continued. The real bone of contention is over these 10 shares which were originally transferred to Brown and later back to the Company. It is the contention of the plaintiff on this phase of the case that he was overreached in this matter, and that in fact the indebtedness to Brown was an outstanding indebtedness connected with the business at the time the defendant purchased a one-half interest therein, and that the defendant in using the method he did with reference to these 10 shares, wrongfully deprived him of his rights therein, thus gaining advantage of a majority of the stock of the corporation, and was threatening to vote the plaintiff out of his connection with the corporation, he being a minority stockholder. Roughly stated, this is the real contention between the parties. It is to be

remembered that this is an equity case triable *de novo* in this court. It necessarily follows that if the Brown indebtedness were a debt of the business when Heywood bought in, he would be liable for one-half of such indebtedness, and if this be true, then when the indebtedness was paid by the corporation and the stock returned by Brown, the stock, having been taken from Petersen's stockholdings, should have been returned to Petersen, and if this were done, the stockholdings of the two parties would then be equal, to wit, 180 shares each.

We therefore turn to the fundamental question of whether or not this Brown note was an indebtedness of the business in which Heywood bought a one-half interest. In July, 1922, Petersen and Heywood signed a written agreement a part of which is as follows:

"Whereas a corporation is about to be formed known as the H. A. Petersen Company, Incorporated, and

"Whereas H. A. Petersen is the owner of certain real estate and equipment and stock of supplies and steel products situated at 302 South First Avenue, and

"Whereas it is contemplated the corporation will purchase said real estate, stock, supplies and finished products, and

"Whereas it is desired to establish a fair and reasonable valuation thereof,

"Now, therefore (Here follows a description)"

The valuation of the property was fixed at $36,000.00, Petersen agreeing to execute a warranty deed for the real estate, and it was agreed that this instrument should be considered as a bill of sale of the personal property and good will of said corporation.

It further provided:

"It is further agreed that the book accounts payable to H. A. Petersen are included in the above bill of sale and assignment and that *the corporation shall assume the debts and obligations of the business now being conducted by H. A. Petersen* and all merchandise bills outstanding.

"The contract rights, interests and benefits now pending or belonging to H. A. Petersen in re any work done or to be

done are hereby included in the above assignment and in this agreement.''

The contract further provided that ''Heywood shall invest $18,000.00 in stock of the corporation'' and H. A. Petersen the same amount, and they should be the sole incorporators.

It will be noticed from the above agreement that it was agreed between these parties that the corporation ''shall assume the debts and obligations of the business now being conducted by H. A. Petersen and all merchandise bills outstanding.''

It might be said incidentally here that for a short time, about a month or slightly over, after Heywood bought a half-interest in said business up until the time of the organization of the corporation, these parties treated the business and referred to it as ''a partnership.''

In July, 1922, another agreement was executed, signed by Heywood and Petersen, running under the name of Hans A. Petersen Co., a partnership, and H. A. Petersen Co., a partnership duly incorporated under the laws of the State of Iowa. It is therein recited that H. A. Petersen and H. W. Heywood are the sole owners of the business, and they desire to sell and assign to the second party (the corporation) all rights and holdings at the agreed price of $36,000.00. They agreed for that amount to convey to the corporation the described premises at 302 South Second Avenue, and ''hereby sell, assign, transfer and set over unto second party in addition to said real estate, the following business and property rights and personal property, to wit: The business of the first party so carried on as a partnership at 302 South Second Ave., Marshalltown, Iowa, and the good will thereof and all business and contracts on hand and all commissions and profits on unfilled orders taken by said party of the first part.'' (Here follows a more detailed description of the personal property connected therewith). The second paragraph of this contract reads as follows:

''Said party of the *second part assumes and agrees to pay the notes and indebtedness and the bills payable of said partnership* which notes, indebtedness and bills payable shall not exceed the sum of $————.''

Referring now to this $1,000.00 indebtedness of Brown's, the evidence conclusively shows that it was for machinery that was bought by Petersen and placed in this manufacturing plant while he was the sole owner and proprietor thereof. The indebtedness therefore represented by the Brown note was an indebtedness connected with and growing out of the business involved herein, and we can not escape the conclusion that under the written contracts herein referred to this indebtedness went with the business, and when Heywood bought a one-half interest therein under the contracts and agreements of the parties he assumed one-half of the indebtedness.

Aside from the wording of the contracts themselves, we are confirmed in this conclusion by the fact that there were other outstanding indebtednesses created by Petersen before Heywood came into the business for machinery and material which were afterwards paid by the corporation through Heywood, and no question was raised as to their being corporation indebtednesses. Further than this, the record shows that at all times the two parties drew equal salaries, and long after the time Heywood divided the stock by taking five shares and giving Petersen five shares, a dividend of $6,000.00 was divided between them, each taking $3,000.00.

It is evident then that either through deliberation or mistake, when stock was to be issued to Brown to secure this $1,000.00 indebtedness, it should have been issued by taking five shares from Heywood and five shares from Petersen, and the payment of the indebtedness by the corporation was simply the carrying out of the agreement between the parties at the time the corporation was formed, and when this stock came back into the hands of the corporation by the payment of the debt, if it were to be distributed, it should have been turned back to Petersen as it was his stock in the first place which was put up to secure the corporation debt, and there was no reason why when it came back it should have been divided between Petersen and Heywood each taking five shares. We conclude, therefore, that under the prayer of the petition, the five shares of stock which came to Brown, which are now represented by the five shares issued to Heywood, do not belong to Heywood, but in fact belong to Petersen, and should be so decreed by the court which is in fact what was done by the decree below.

■ II. It appears from the record that in August, 1928, Heywood apparently became dissatisfied with some matters connected with the business and concluded from certain records in the files that he had paid more for his half-interest in the concern than it was worth, and he seems to have entertained the thought that matters connected therewith had been misrepresented to him by Petersen at the time he bought into the concern.

Prior to the time this difficulty arose, business having been prosperous and satisfactory to Petersen, he made Heywood a present of $4,000.00 in notes herein referred to as a Christmas present. When this condition arose in August, 1928, Petersen says he discovered there was something worrying Heywood and he took it up with him as he wished to know what was distressing him, and Heywood admitted he was in financial trouble. (Heywood in his testimony, however, denies that he was in any financial distress.) Heywood admits, however, that the $14,000.00 which he paid in to the business was borrowed money. Petersen seems to be of a rather "easy-going" disposition and says that in order to allow Heywood to avoid his financial distress, he agreed he would not draw any dividends, and that Heywood could draw all of the dividends until he got out of his financial trouble. This, according to Petersen's testimony, was merely an accommodation to Heywood to relieve him of his then condition and was not intended as a gift to Heywood of Petersen's share of the dividend, but was simply a loan to him for the time being. Heywood wanted to know whether Petersen would put it in writing and Petersen agreed, and the following writing was signed:

"I, H. A. Petersen, agree that all dividends of the H. A. Petersen Company are to go to H. W. Heywood after all bills, salaries and notes of the Company have been taken care of. Such bills, salaries and notes to be taken care of before dividends are declared.

"The amount of Fourteen thousand dollars is to be made plus 6% interest, and is to be paid to H. W. Heywood before any other dividends are declared." This was dated August 6, 1928, and signed by H. A. Petersen.

Heywood claims that after having discovered what he thought to be an injustice had been done him by reason of the.

valuation of the property at which he purchased, Petersen, by reason of this written agreement, agreed that Heywood was defrauded to the extent of $14,000.00, in the purchase of said half-interest in the property, and Petersen by this means was attempting to reimburse him (Heywood).

The testimony in this respect is squarely in conflict between the two parties, but the fact situation as it exists tends in our judgment to support the contention of Petersen. If Heywood's construction of this agreement is to be given force and effect, then he would be getting a one-half interest in said business without paying anything whatever therefor. This result shows conclusively to our minds that it was never so intended, and the contention of the plaintiff, Petersen, in relation thereto is the true situation. It appears from the record that no dividends whatever were drawn by Heywood under this agreement, and that the agreement was wholly without consideration and the district court was right in cancelling the same.

The foregoing covers the material and controlling questions in the case and we find no error in the ruling of the district court. It is, therefore,—Affirmed.

FAVILLE, C. J., and STEVENS, WAGNER, GRIMM, KINDIG, and EVANS, JJ., concur.